IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| RICHARD BRYAN ARMAS, | Case No. 6:24-cv-00272-SB |
| Petitioner, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| J. HIGHBERGER, | |
| Respondent. | |

**BECKERMAN, U.S. Magistrate Judge.**

Petitioner Richard Bryan Armas ("Petitioner") filed this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the following reasons, the district judge should deny the Petition for Writ of Habeas Corpus (ECF No. 1) and decline to issue a certificate of appealability.

## BACKGROUND

On November 28, 2012, a Deschutes County grand jury returned an indictment charging Petitioner with one count each of Sodomy in the First Degree, Attempted Sodomy in the First Degree, Sexual Abuse in the First Degree, and Private Indecency. (Exs. Ans. (ECF Nos. 16-17, 21) ("Resp't Exs."), Ex. 102.) The charges arose from Petitioner's sexual contact with four-year-

old "EC" on one occasion in September 2012. (Resp't Exs. 102 at 1, 3;[1] 116 at 9-10.) Petitioner pleaded not guilty on all counts and proceeded to trial before a jury in October 2014. (Tr. State Ct. Proceedings ("Tr."), ECF Nos. 18-19.)

At trial, the prosecutor elicited evidence that on September 17, 2012, Petitioner provided childcare for EC in his home while EC's parents went to work and attended a retreat. (Tr. at 232, 295-98.) EC, who was six at the time of trial, testified that while in Petitioner's care, he pulled down her shorts and underwear and touched and licked her "private." (*Id.* at 274, 279-81.) EC also testified that she saw Petitioner's private, and that Petitioner asked her to lick his private, but she ran away. (*Id.* at 278, 280.) After the abuse occurred, EC's parents noticed several changes in EC's behavior, including acting "clingy" when she was dropped off at preschool, crying about monsters at bedtime, having nightmares, ignoring men (including her own father), screaming in anger more frequently, and becoming afraid when they drove by Petitioner's home. (*Id.* at 302-04, 316, 564, 593.) Petitioner denied acting inappropriately toward EC, claiming that he had merely given her "raspberries" on her stomach, and presented several witnesses in his defense. (*Id.* at 996-97, 1000.)

The jury returned guilty verdicts on all counts. (*Id.* at 1374-76; *see also* Resp't Ex. 101.) At sentencing, the prosecutor noted that Petitioner's first-degree sodomy conviction was subject to a mandatory minimum sentence of 300 months pursuant to "Jessica's Law"[2] (codified at OR.

---

[1] When citing to Respondent's exhibits, the Court refers to the exhibit page numbers located in the lower right corner.

[2] "Jessica's Law," which Oregon adopted in 2006, requires a "25-year mandatory minimum sentence for adults convicted of raping, sodomizing, or sexually penetrating a child under 12 years of age." *Spradlin v. Nooth*, No. 2:15-cv-00118-SU, 2017 WL 2532229, at *1 n.1 (D. Or. Mar. 6, 2017), *findings and recommendation adopted*, 2017 WL 2531942 (D. Or. June 8, 2017).

PAGE 2 – FINDINGS AND RECOMMENDATION

Rev. Stat. § 137.700(2)(b)) and argued that there was "no reason for the Court to not follow that mandate from the Oregon Legislature." (Tr. at 1385.) Petitioner disagreed, arguing, among other things, that the 300-month mandatory minimum sentence was disproportionate to the gravity of the offense pursuant to both the Oregon and United States Constitutions. (*Id.* at 1396; Resp't Ex. 115 at 13-24.) After hearing additional argument from the parties, allowing Petitioner and several individuals supporting him to address the court, and reviewing the applicable law, the trial court analyzed the proportionality of the 300-month mandatory minimum sentence:

> First of all, the severity of the penalty, 300 months, as the cases have acknowledged, is a very severe penalty. But the gravity of the offense, this offense falls squarely -- if not at the most serious range of the statute, it falls squarely within the statutory prohibition.
>
> You know, this was oral sodomy. No, as one might think in the *Rodriguez/Buck*[3] cases, possibility that that could be innocent conduct, inadvertent conduct, or anything of that nature. Very clearly the conduct that the legislature sought to prohibit with that statute. But it's also not the most severe conduct that is covered by that statute. The statute is sodomy.
>
> When people think of the offense of sodomy, this is not the type of behavior that's envisioned. And other types of sodomy, among other things, may involve violence, they may involve injury. They certainly are, I believe, perceived as more severe conduct than the alleged conduct here -- the true conduct here.
>
> So in that regard, this type of crime is not very much at all like rape in the first degree. It's a very distinct offense, . . . horrific though it was.
>
> Characteristics of [Petitioner]. I've already talked about his strong standing in the community, his commendable lifestyle to all outward perceptions.

---

[3] *State v. Rodriguez/Buck* was a consolidated appeal of two criminal defendants convicted of first-degree sexual abuse, an offense that is subject to a mandatory minimum sentence of seventy-five months in prison. 347 Or. 46 (2009). Defendant Rodriguez's case involved her holding the back of a twelve-year-old's head against her clothed breasts for approximately one minute and massaging the sides of his head, while Defendant Buck allowed the back of his hand to remain against the clothed buttocks of a thirteen-year-old girl when she leaned back against his hand and later wiped dirt off the back of her shorts. The Oregon Supreme Court concluded that the mandatory minimum sentence "shocked the conscience" and was unconstitutionally disproportionate to the facts of the crimes pursuant to Article I, section 16 of the Oregon Constitution in both cases. *See id.* at 78-79.

PAGE 3 – FINDINGS AND RECOMMENDATION

The fact that he has a substantial number of people who will attest that he's a very responsible caring member of his community. And interestingly, this case arose more or less in the context of him finalizing his adoption of a child, which is an adoption of a foster child that he had cared for, which is something very favorable to the community, especially in light of the fact that there is nothing about this case that suggested that he was doing that any way in connection with any sort of criminal design.

Those are the types of things that are in his side in the column in favor of an argument that to sentence him to 300 months would shock the conscience in this case.

And finally, the nature of this offense, comparing it to other similar-type offenses under the statute, it really isn't like rape in the first degree or anal sodomy. It's a horrific crime that he is convicted of, but it is different than those, and yet the statute doesn't allow for a different sentence under those circumstances.

Also as far as the nature of the offense is concerned, I think that it's highly relevant that all indications are and in fact the State's argument in this case was that this was a crime of opportunity. There was no evidence of planning, grooming, design. It was happenstance that the child was at his house in the first instance. And what he did and was found guilty of was -- at least the State's theory, and all that we have, was a momentary lapse of judgment and not a comment on who he is as a human being or how he has been in the past or what he'll be in the future. So again, that column -- or that factor I think weighs in his favor.

So what I will say -- this won't make very many people happy today, but what I will say is that if I felt that I had the discretion, I would not impose 300 months, because I think that this is the type of rare case that is the exception. But the reason I find I don't have the discretion to impose less than 300 months is that my reading of *State versus Shaw* and *State versus Alwinger*[4] limits my discretion.

I've already said that *State versus Shaw* talks about instances that fall at the fringe, conduct that can be perceived as much less harmful than the primary target of the statute.

---

[4] *State v. Alwinger* addressed a single instance of digital penetration that occurred while the defendant toweled off a three-year-old girl after she had been playing in a sprinkler. *See* 231 Or. App. 11 (2009), *adhered to as modified on recons.*, 236 Or. App. 240 (2010). The Oregon Court of Appeals concluded that the 300-month mandatory sentence pursuant to Jessica's Law was not disproportionate under either the Oregon Constitution or the Eighth Amendment. *See id.* at 18-19.

PAGE 4 – FINDINGS AND RECOMMENDATION

>       Also, *State versus Alwinger* talks about yet a third offense, digital penetration, and it rejected the argument that because there was no meaningful harm to [the] child in that case, it was dramatically distinct from rape in the first degree and therefore could not be punished with the same penalty.
>
>       I thought about, as I've said, the case law, certainly thought about this case, and I've reviewed everything that was written and submitted to me. I cannot distinguish in any meaningful way the conduct for which [Petitioner] has been convicted and conduct in *State versus Alwinger* in terms of severity, in terms of impact upon the child, to the extent that it is relevant, impact upon the family.
>
>       And so again, I do find that this mandatory 300 months is disproportionate to the offense for which [Petitioner] is now convicted, but I do not believe that I have the discretion to impose a lesser sentence than that.
>
>       If I did, I would impose a sentence that took into consideration the guidelines, took into consideration those other offenses that fall within the statute, and I would, in all likelihood, impose 120 months. But as it is, I'm imposing a sentence of 300 months on Count 1.

(Tr. at 1414-18.) The trial court imposed concurrent sentences on the remaining counts, to be followed by a life term of post-prison supervision. (Resp't Ex. 101.)

Petitioner filed a direct appeal, raising four assignments of error. (Resp't Ex. 103 at 2-4.) As relevant here, Petitioner alleged that the trial court erred when it imposed the 300-month mandatory minimum sentence and life post-prison supervision on the first-degree sodomy conviction. (*Id.* at 63-77.) The Oregon Court of Appeals affirmed without opinion (Resp't Ex. 106 at 16), the Oregon Supreme Court denied review (Resp't Ex. 107), and the United States Supreme Court denied Petitioner's petition for writ of certiorari (Resp't Exs. 109-10).

Petitioner next sought postconviction relief ("PCR"). (Resp't Ex. 111.) In his counseled amended petition, Petitioner alleged that his trial attorney was ineffective in several respects. (Resp't Ex. 112 at 3-8.) After an evidentiary hearing, the PCR court denied relief. (Resp't Exs. 225-26.) The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. (Resp't Exs. 230-31.)

PAGE 5 – FINDINGS AND RECOMMENDATION

On February 9, 2024, Petitioner filed the instant habeas petition, asserting a single ground for relief:

> **Ground One:** Imposition of an unconstitutionally disproportionate sentence under the Eighth Amendment to the United States Constitution.
>
> **Supporting Facts:**
>
> • The Eighth Amendment to the United States Constitution protects against cruel and unusual punishment and has been successfully litigated to encompass protection from prison conditions grossly disproportionate to the severity of the crime warranting imprisonment.
>
> • Oregon Revised Statutes defines the act of sodomy (in part) as a person who engages in oral or anal intercourse with another person. Sexual intercourse (in part) is further defined as genital-genital, oral-genital, genital-anal or oral-anal contact.
>
> • The act petitioner was convicted of is within the scope of the statute as there was alleged contact between the mouth and the pubic area while giving 'raspberries' on a child's belly.
>
> • Still within the scope of the same statutes, sodomy can also be acted out as (and is more commonly, traditionally associated with) penetration and insertion of the penis into the anus. This act would most likely include physical pain, physical injury and lasting psychological effects, especially in the case of an adult and young child.
>
> • Any reasonable person will conclude that genital-anal sodomy is significantly more egregious, invasive and of much greater severity than the act petitioner is convicted of.
>
> • Oregon's definition of sodomy and mandatory minimum sentencing do not discriminate between any act of sodomy and do not account for physiological or psychological differences including perceived trauma, actual trauma or duration of trauma in any way, regardless of the action.
>
> • The mandatory minimum sentencing for ORS 163.405(c) Sodomy in the First Degree is 300 months (25 years) of imprisonment and lifetime post-prison supervision.

- Trial court ruled the mandatory minimum sentence in the petitioner's case to be "disproportionate to the offense"[5] and "would shock the conscience," but the court lacked the discretion to impose a lesser sentence.

- Trial court found "this is the type of rare case that is the exception" in meriting a lesser sentence and deserving departure from the mandatory minimum statu[t]e.[6]

- Trial court found ethical and appropriate sentence to be 120 months, but imposed 300 months, per statute. (Exhibit 1)

- 300 months is a 250% increase over the sentence which trial court determined to be warranted.

- <u>The additional 15 years of imprisonment beyond what was found to be in the best interest of justice</u> constitutes a grossly disproportionate condition upon petitioner when compared to the severity of the crime; Thus, a violation of the Eighth Amendment to the United States Constitution.

(Pet. at 5.)[7] Respondent urges the Court to deny habeas relief, arguing that the state court decision denying relief on Petitioner's claim is entitled to deference. (Resp't Resp. Pet. (ECF No. 13), at 6-8.)

## DISCUSSION

### I. LEGAL STANDARDS

The Antiterrorism and Effective Death Penalty Act ("AEDPA") prohibits relitigation of any claim adjudicated on the merits in state court unless such adjudication resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) was "based on an

---

[5] "As rendered through all three factors used in Oregon's standard to determine the threshold of proportionality."

[6] "Petitioner has no felonies or sexual criminal history prior to this case."

[7] The Court uses the ECF-assigned pagination when citing to the petition or the parties' briefing in this case.

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

A state-court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of clearly established federal law occurs if the state court correctly identifies the governing legal principle but misapplies that principle to the facts at hand. *See id.* at 407 (holding that "a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case"). The "unreasonable application" clause requires the state court's decision to be more than merely erroneous or incorrect. *See id.* at 411 (noting that "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly"). Rather, the state court's application of clearly established federal law must be objectively unreasonable. *See id.* at 409 (instructing that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable").

"Clearly established Federal law" under the AEDPA "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412; *see also Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (noting that "[a] legal principle is 'clearly established' within the meaning of [28 U.S.C. § 2254(d)(1)]

PAGE 8 – FINDINGS AND RECOMMENDATION

only when it is embodied in a holding of [the Supreme] Court"). To be "clearly established," a Supreme Court precedent must "'squarely address[] the issue' in the case before the state court, or 'establish[] a legal principle that clearly extends'" to the case before the state court. *Andrews v. Davis*, 866 F.3d 994, 1018 (9th Cir. 2017), *on reh'g en banc*, 944 F.3d 1092 (9th Cir. 2019) (simplified).

The AEDPA thus imposes "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (simplified); *see also White v. Wheeler*, 577 U.S. 73, 76-77 (2015) (acknowledging that the "AEDPA, by setting forth necessary predicates before a state-court judgment may be set aside, erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court") (simplified). "The petitioner carries the burden of proof." *Pinholster*, 563 U.S. at 181.

## II. ANALYSIS

Petitioner alleges that the trial court violated the Eighth Amendment by imposing a 300-month term of imprisonment and lifetime post-prison supervision pursuant to Jessica's Law. Petitioner raised the same argument at sentencing, but the trial court nevertheless imposed the 300-month mandatory minimum sentence, and the Oregon appellate courts denied relief.

"The Eighth Amendment, which forbids cruel and unusual punishment, contains a narrow proportionality principle that applies to noncapital sentences." *Ewing v. California*, 538 U.S. 11, 20 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)). "[S]trict proportionality between the crime and sentence" is not required, but "extreme sentences that are grossly disproportionate to the crime" violate the Eighth Amendment. *Graham v. Florida*, 560 U.S. 48, 56 (2010) (simplified). The precise contours of the "gross disproportionality principle" are

"unclear," but the Supreme Court has emphasized that it applies only in "exceedingly rare" and "extreme" cases. *Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003); *see also Solem v. Helm*, 463 U.S. 277, 289-90 (1983) (noting that a successful challenge to the proportionality of a sentence is "exceedingly rare" outside "the context of capital punishment"); *Crosby v. Schwartz*, 678 F.3d 784, 791 (9th Cir. 2012) (acknowledging that Supreme Court precedent "lack[s] . . . clarity regarding what factors may indicate gross disproportionality[,]" but that the Court has made clear that "a term of years sentence only violates the Eighth Amendment in extraordinary circumstances") (simplified).

In the habeas context, "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle[.]" *Andrade*, 538 U.S. at 73. Thus, to prevail on an Eighth Amendment proportionality claim, a habeas petitioner must make a threshold showing of gross disproportionality through a "comparison of the crime committed and the sentence imposed." *Ewing*, 538 U.S. at 30 (citing *Harmelin*, 501 U.S. at 1005). Where such comparison "leads to an inference of gross disproportionality," a reviewing court "should then compare the [petitioner]'s sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Graham*, 560 U.S. at 61 (quoting *Harmelin*, 501 U.S. at 1005). If a comparison of the crime and sentence raises no inference of gross proportionality, however, a comparative analysis is unnecessary. *See id.* (explaining that the court should proceed to a comparative analysis in "the rare case" in which an inference of gross proportionality arises).

The Court finds that although Petitioner's 300-month sentence is lengthy, it does not raise an inference of gross disproportionality compared to Petitioner's crime. The jury concluded that Petitioner orally sodomized a four-year-old girl while entrusted with that child's care. As

PAGE 10 – FINDINGS AND RECOMMENDATION

Respondent points out, the Supreme Court has upheld longer terms of imprisonment for far less egregious offenses. *See, e.g.*, *Ewing*, 538 U.S. at 30-31 (affirming a sentence of twenty-five years to life in prison for a "three strikes" offender convicted of stealing three golf clubs); *Harmelin*, 501 U.S. at 994 (affirming a sentence of life imprisonment without the possibility of parole for a first-time offender convicted of cocaine possession); *Rummel v. Estelle*, 445 U.S. 263, 265-66, 285 (1980) (affirming a true life sentence imposed pursuant to a recidivist statute on an offender convicted of obtaining $120.75 under false pretenses where his two prior felonies involved the fraudulent use of a credit card to obtain $80 worth of goods and services and passing a forged check for $28.36).

Petitioner nevertheless argues that his 300-month sentence "shocks the conscience" because his conduct—which he insists "amounted to what can be considered an uncomfortable tickle"—does not compare to the gravity of anal sodomy, which carries the same mandatory 300-month penalty. (Pet'r's Br. (ECF No. 27) at 3-4, 6.) Eighth Amendment jurisprudence, however, "gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle[,]" and Petitioner's troubling mischaracterization of his offense does not negate the seriousness of his conduct nor diminish the gravity of child sexual abuse. *Andrade*, 538 U.S. at 76; *Galindo v. Cain*, No. 2:17-cv-00105-MO, 2019 WL 2746722, at *6 (D. Or. July 1, 2019) (concluding that an Eighth Amendment challenge to a 300-month sentence imposed pursuant to Jessica's Law for orally sodomizing a four-year-old child was "clearly without merit . . . [g]iven the gravity" of the petitioner's conduct); *see also Evensizer v. Taylor*, No. 2:19-cv-00015-YY, 2022 WL 525991, at *3 (D. Or. Jan. 13, 2022) (denying the petitioner's Eighth Amendment challenge to his Jessica's Law sentence and finding that "[i]n light of, among other factors, the grave impact of sex offenses committed against children, the Ninth Circuit and

PAGE 11 – FINDINGS AND RECOMMENDATION

judges in this district have rejected Eighth Amendment disproportionality claims similar to Petitioner's") (citations omitted), *findings and recommendation adopted*, 2022 WL 523443 (D. Or. Feb. 21, 2022).

That the trial court found Petitioner's arguments to be persuasive, going so far as to opine that the 300-month mandatory sentence was disproportionate as applied to Petitioner, is inconsequential given the trial court's imposition of the mandatory minimum sentence. Indeed, the trial court would have been within its authority to impose a shorter sentence had it made an actual finding that the 300-month mandatory minimum violated the Eighth Amendment. Petitioner's reliance on the trial judge's dicta that a 120-month sentence would be more appropriate is thus misplaced.

For these reasons, it was not objectively unreasonable for the state court to conclude that Petitioner's sentence is not among the "exceedingly rare" or "extreme" sentences that would violate the Eighth Amendment's "gross disproportionality" principle, and the district judge should deny habeas relief.

## CONCLUSION

For the reasons stated, the district judge should DISMISS the Petition for Writ of Habeas Corpus (ECF No. 1) with prejudice, and decline to issue a Certificate of Appealability because Petitioner has not made a substantial showing of the denial of a constitutional right.[8]

## SCHEDULING ORDER

The Court will refer its Findings and Recommendations to a district judge. Objections, if any, are due within fourteen (14) days of service. If no objections are filed, the Findings and

---

[8] *See* 28 U.S.C. § 2253(c)(2); *see also Galindo*, 2019 WL 2746722, at *6 (declining to issue a certificate of appealability where the petitioner alleged his 300-month sentence under Jessica's Law violated the Eighth Amendment).

PAGE 12 – FINDINGS AND RECOMMENDATION

Recommendation will go under advisement on that date. If objections are filed, a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

**IT IS SO ORDERED.**

DATED this 25th day of February, 2025.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge